UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| PIERCE JOSEPH MCNAMARA and KENDALL NOEL EDERER,  Plaintiffs,  v.  VANGUARD VWNA, LLC (doing business as Vanguard Volkswagen of North Austin), EQUIFAX INFORMATION SERVICES LLC; EXPERIAN INFORMATION SOLUTIONS, INC..; and TRANS UNION, LLC,  Defendants. | Case No: 23-cv-1166 |

## COMPLAINT

PIERCE J. McNAMARA and KENDALL N. EDERER ("Plaintiffs" together, or "McNamara" or "Ederer," individually). Whitlowe") bring this action against defendants: (1) VANGUARD VWNA, LLC (doing business under the assumed name Vanguard Volkswagen of North Austin) ("Vanguard"), (2) EQUIFAX INFORMATION SERVICES LLC ("Equifax"), (3) EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian), and (4) TRANS UNION, LLC ("Trans Union") (collectively, all "Defendants" or "Credit Bureau Defendants" for Equifax, Experian and TransUnion together).

1.  Plaintiffs bring this action against Defendants for actual, statutory, and punitive damages caused by their violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (hereinafter referred to as the "FCRA").

1

## JURISDICTION & VENUE

2. Jurisdiction is proper under 28 U.S.C. § 1331, and 15 U.S.C. § 1681p ("FCRA") as this action arises under the laws of the United States.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the acts and omissions giving rise to the claims occurred within this judicial district.

## PARTIES

4. Plaintiffs, Pierce J. McNamara and Kendall N. Ederer, are both natural persons who reside in Austin, Texas. At all relevant times herein, Plaintiffs are "consumers" as that term is defined by 15 U.S.C. §1681a(c).

### Defendant Vanguard Volkswagen

5. Defendant VANGUARD VWNA, LLC (doing business under the assumed name Vanguard Volkswagen of North Austin) ("Vanguard") is a Texas limited liability company engaged in the car dealership business. Vanguard regularly conducts business at 6900 Burnet Road, Austin, TX 78757 and regularly transacts business with customers throughout Texas and sometimes other states as well. Vanguard's registered agent is John Christopher Late and is located at 1501 E. Interstate 20, Arlington, TX, 76018-4802.

### Defendant Equifax Information Services LLC

6. Defendant Equifax Information Services, LLC ("Defendant Equifax" or "Equifax") is a foreign limited liability company authorized to do business in the State of Texas, including in the Western District.

7. Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

### Defendant Experian Information Solutions, Inc.

8. Defendant Experian Information Solutions, Inc. ("Defendant Experian" or "Experian") is a foreign limited liability company authorized to do business in the State of Texas, including in the Western District.

9. Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

### Defendant Trans Union, LLC

10. Defendant Trans Union, LLC ("Defendant Trans Union" or "Trans Union") is a foreign limited liability company authorized to do business in the State of Texas, including in the Western District.

11. Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

12. Defendants are all "persons" as that term is defined by 15 U.S.C. §1681a(b).

## GENERAL BACKGROUND

### *Consumer Reporting "Inquiries"*

13. An "inquiry" is a record that identifies the person or business that obtained a consumer's credit report from a CRA, that person or business's address, and the date on which the person or business acquired the consumer's credit report.

14. Because inquiries identify the persons and businesses *from whom* the subject of a credit report has sought credit and *how often* that consumer seeks credit, they are a part of the consumer's credit history and included in that consumer's credit report.

15. Inquiries generally have a negative impact on a consumer's credit score (*i.e.*, the more inquiries, the lower the score) because scoring programs consider consumers who make multiple applications for credit riskier than consumers who do not.

16. Like other items on consumer reports, inquiry information is often inaccurate, and inquiries may appear on a consumer's credit report notwithstanding the fact that the consumer did not actually seek credit from the lender who pulled the report(s). This can occur when, for example, a CRA provides a consumer's report to a creditor based on fraud or unauthorized access.

17. Including inaccurate inquiries or inquiries that do not belong to the consumer who is the subject of the credit report misrepresent the consumer's true credit history, unfairly lowering the consumer's credit score.

*Consumers' Rights to Dispute Information in Their Credit Files*

18. To combat the problems noted above, Congress included a mechanism in the FCRA by which consumers may dispute inaccurate or incomplete information in their credit files.

19. When a consumer notifies a CRA that he or she disputes "the completeness or accuracy of *any item* of information contained in [his or her] file," the CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or delete the item from the file" within 30 days of receiving the consumer's dispute. 15 U.S.C. § 1681i(a)(1)(A) (emphasis added).

20. As part of the reinvestigation, a CRA must "provide notification of the dispute to any person who provided any item of information in dispute," and the notice must "include all relevant information regarding the dispute that the agency has received from the consumer" 15 U.S.C. § 1681i(a)(2)(A). Contacting the source of the disputed information is critical to a reasonable reinvestigation.

## FACTUAL BACKGROUND

*The Instant Matter re Vanguard*

21. Unlike many, Plaintiffs have earned good credit and are desirable borrowers to lenders. Ederer and McNamara are a recently married couple working to build healthy financial profiles together. Ederer is a Doctor of Physical Therapy, McNamara is a Naval Academy graduate, and disabled veteran. McNamara currently works as a government contractor with a high-level security clearance. To maintain

5

his security clearance level, and thus his employment (or even qualifications for promotions including higher paying positions), McNamara needs to retain a stellar credit profile.

22. Consequently, on December 13, 2022, while at Vanguard, Plaintiffs devised their own very specific financing plan to buy a Volkswagen Tiguan SUV (Tiguan"). Plaintiffs' plan was to use pre-approved credit from one of their own individually "hand-picked" banks they had existing or prior financial relationships with (*e.g.*, USAA Federal Savings Bank ("USAA"), Penn Federal Credit Union, or Navy Federal Credit Union).

23. Plaintiffs knew that their own financing plan would afford them with an opportunity for excellent credit terms available without any "help" from the dealer's relationships with lenders. Plaintiffs also knew that financing with dealer's lender relationships often come with higher interest rate and other costs for car buying consumers.

24. At no point did Plaintiffs give any oral or written approval, or authorization of any kind, to any Vanguard dealer employee or manager to entertain any alternate financing options outside of their own hand-picked banks. Specifically, Plaintiffs did not give any verbal or written approval or authorization to have their credit pulled by Vanguard, or any other creditor at Vanguard's direction, under any circumstance whatsoever.

25. Quite to the contrary. In fact, Plaintiffs specifically and directly instructed all Vanguard personnel that under no circumstances were they to pull

6

Plaintiffs credit reports. Plaintiffs made it abundantly clear that they would <u>not</u> move forward with a purchase of the Tiguan if the transaction was conditioned on credit associated with Vanguard or any of its partner banks.

26. Nevertheless, Vanguard finance employee, Melanie Villa ("Villa") made misrepresentations to Plaintiffs which enabled her to access Plaintiffs confidential information. Villa claimed that she needed the information (e.g. Plaintiffs' social security numbers) to enable her to cancel existing service contracts. Villa's explanation was that she needed to cancel existing contracts to obtain the best deal or lowest price possible on the potential car purchase. Villa explained that this would come in the form of refunds from the cancelled service contracts which could then be used to serve as a larger down payment. Villa used this subterfuge to gain access to Plaintiffs private personal information (SSNs) which next enabled Vanguard to perform or facilitate numerous illegal credit pulls (over 30+) through multiple lenders from approximately December 13, 2022, and continuing through December 23, 2022.

27. On information and belief, Vanguard uses its relationships with partner banks and lenders to help fatten its profits margins and sweeten employee commissions, salaries or other compensation. And it is for those reasons Vanguard engaged in the unlawful credit pulls of Plaintiffs' credit.

### **DAMAGES**

#### **Actual Damages**

28. As a direct consequence of those credit pulls, Plaintiffs credit scores immediately dropped. Ultimately, Plaintiffs lower scores caused by Vanguard's illegal

pulls directly increased Plaintiffs' financing costs from USAA on the Tiguan they ended up purchasing on December 23, 2022.

29. Moreover, McNamara has spent both money and time, at least one-hundred hours, attempting to get the wrongful credit pulls excised from Plaintiffs credit reports. Among other things, McNamara spent time communicating about this situation via phone calls, emails and letters to Vanguard, the Credit Bureau Defendants, the National Credit Center and all of the nearly 15 lenders involved in this situation.

30. McNamara also has spent time explaining the situation to lawyers while attempting to exercise Plaintiffs' rights.  In total, McNamara estimates to have spent more than 150 hours working to get the illegal credit pulls cleared off Plaintiffs credit reports. Plaintiffs have also incurred the costs of certified mailers incurred when sending various forms of disputes to Vanguard, the Credit Bureau Defendants, and various lenders. Plaintiffs also incurred the expense of "LifeLock" credit monitoring services to help them determine whether any of the above matters have been fixed and to help quickly identify any other associated problems which might arise.

31. Vanguard's actions caused other harms as well. For example, McNamara and Ederer had planned to cancel or downgrade their credit cards carrying annual fees after McNamara's exit from his military service because they would no longer be eligible for annual fee exclusions under those respective credit

cards with Chase[1] and American Express.[2] Because of the unauthorized and excessive credit pulls, Plaintiffs were not able to cancel those cards because they feared a concomitant degradation of their credit scores would have resulted. The total annual fees paid in 2023 on these cards amounted to $7,070.

32. As a direct consequence of Vanguard's conduct, Plaintiffs have also suffered, continue to suffer, and will suffer future damages, including the loss and denial of credit, lost credit opportunities, damage to reputation, invasion of privacy, emotional distress, including stress, anxiety, pain, anguish, physical illness, embarrassment, humiliation, and constant and continuing stress.

33. Finally, for over 50 years, one of the fundamental purposes of the FCRA has been to ensure protection for consumers' privacy rights. "The bill also seeks to prevent an undue invasion of the individual's right of privacy in the collection and dissemination of credit information. ... (Section 604) requires that the information in a person's file be kept confidential and used only for legitimate business transactions." S. Rept. 91-517, 91st Cong., 1st Sess. 1 (1969).

34. Because Vanguard accessed Plaintiffs credit without any permissible purpose, their privacy was damaged. Vanguard had no legal justification in accessing and reviewing their credit reports and ordering numerous lenders to do the same.

---

[1] https://www.forbes.com/advisor/credit-cards/military-chase-sapphire-reserve/ (last visited 9-25-2023) ("Recognizing the sacrifices and service of military personnel, Chase provides a military fee waiver for Sapphire Reserve card holders and extends its benefits to active-duty military spouses.").

[2] https://www.americanexpress.com/us/help-support/service-members-civil-relief/ (last visited 9-25-2023)

These privacy damages were exacerbated and widespread because so many different lenders were implicated in the over 30 total illegal credit pulls.

### *The Instant Matter re the Credit Bureau Defendants*

35. This case is also about Equifax, Experian and Trans Union's failure to fulfill their statutory duties with respect to consumer disputes of inquiry information.

36. In early June 2023, via certified mail, Plaintiffs sent dispute letters to Equifax, Experian and Trans Union explaining the inaccurate credit pulls that were made. Plaintiffs included information necessary to authenticate themselves, and also other materials and documentation explaining why all 38 credit pulls from 12/13/2023 – 12/23/2023 were illegal.

37. Here, on information and belief, Equifax, Experian and Trans Union did not adequately reinvestigate disputed inquiries; did not notify the source of the disputed inquiries about the consumers' disputes of the information; did not provide the sources with all the relevant information about the disputes; and did not delete disputed inquiries that it cannot verify.

38. These failures not only violated Plaintiffs' FCRA rights to the disputes described above, they also undermined the accuracy of information within Plaintiffs' consumer reports because consumers such as Plaintiffs often notice inaccurate information of which the reporting CRA is unaware. The FCRA's dispute procedure is the *singular* method (outside of litigation) by which consumers, such as Plaintiffs, can correct errors in their credit files.

39. Equifax, Experian and Trans Union violated the requirements of FCRA sections 1681i(a)(1) and (2) by failing to reinvestigate disputed inquiries and failing to notify the source of the inquiry about the consumer's dispute. As a result, Equifax, Experian and Trans Union harmed Plaintiffs. Such harms effectively undercut the healthy functioning of the consumer credit system by providing inaccurate and misleading credit history information about consumers to potential creditors and service providers.

40. Equifax, Experian and Trans Union's refusal to reinvestigate Plaintiffs' concerns and correct their reports caused extreme frustration, stress, anxiety, and annoyance to Plaintiffs. These ongoing credit issues have impeded Plaintiffs' ability to move forward beyond this credit incident and reduced their chances of getting on a firm financial footing at the beginning of their recent marriage.

41. As a direct and proximate result of Equifax, Experian and Trans Union's refusal to reinvestigate their disputes of the illegal inquiries, Plaintiffs suffered, without limitation, the following injuries: (A) the continued presence of many of the inquiries on their credit reports and corresponding reduction of their credit scores; (B) deprivation of the information that Equifax, Experian and Trans Union had not reinvestigated his dispute or contacted the relevant banks which, at a minimum, would have armed him with additional information concerning his creditworthiness; (C) distress from getting the run around from Equifax, Experian and Trans Union concerning their disputes and what Equifax, Experian and Trans Union would actually do to investigate them; and (D) lost time and resources expended in connection with

making multiple ignored disputes of the inquiries to Equifax, Experian and Trans Union and directly contacting those banks themselves only to learn that it could not help.

## GROUNDS FOR RELIEF COUNT I – VANGUARD
## FAIR CREDIT REPORTING ACT ("FCRA"), 15 U.S.C. § 1681 et. seq.

42. Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

43. Credit reports, as alleged in this pleading, are "consumer reports" as that term is defined by 15 U.S.C. §1681a(d).

44. The FCRA establishes very specific rules limiting when and why an entity can obtain a consumer report:

> **(f) Certain use or obtaining of information prohibited.** – A person shall not
> use or obtain a consumer report for any purpose unless –
>
> (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
>
> (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

See 15 U.S.C. § 1681*b* (f).

45. As a result of Vanguard's conduct and actions, Plaintiffs suffered damage by loss of credit; loss of the ability to purchase and benefit from their good name and credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and

constant stress of having another consumers' personal and credit account information mixed into their credit files and reports. See also paragraphs 28-33 above.

46. Defendant Vanguard's conduct and action was willful, rendering it also liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

47. Plaintiffs are entitled to recover attorney's fees and costs from Vanguard in an amount to be determined by the Court pursuant to 15 U.S.C.§ 1681n and/or § 1681o.

### GROUNDS FOR RELIEF COUNT II
### 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
### Against Defendants Equifax, Experian, and Trans Union

48. Plaintiffs re-allege and incorporate the allegations set forth in Paragraphs 1-41 as if fully stated herein.

49. Defendants Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiffs' credit files after they received notice of such inaccuracies; by failing to conduct a lawful reinvestigation of disputed hard inquiries within the 30-day time frame outlined in the FCRA; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiffs' credit file and reports.

50. As a result of Defendants Equifax, Experian, and Trans Union's conduct, action, and inaction, Plaintiffs suffered damage by loss of credit; loss of the ability to

purchase and benefit from their good name and credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and constant stress of having another consumers' personal and credit account information mixed into their credit files and reports. See also paragraphs 28-33 above.

51. Defendants Equifax, Experian, and Trans Union's conduct, action, and inaction was willful, rendering them each separately liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

52. Plaintiffs are entitled to recover attorney's fees and costs from Defendants Equifax, Experian, and Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C.§ 1681n and/or § 1681o.

WHEREFORE, Plaintiffs request that this Honorable Court:

  a. Enter judgment in Plaintiff's favor and against Defendants;
  b. Appropriate statutory penalties for each violation of the FCRA;
  c. Actual damages;
  d. Punitive damages;
  e. Reasonable attorney's fees and the costs of this litigation;
  f. Pre-judgment and post-judgment interest at the legal rate;
  g. Appropriate equitable relief; and
  h. Such other relief as the Court deems equitable, just, and proper.

53. Plaintiffs demand a trial by jury on all triable issues pursuant to Fed. R. Civ. P. 38.

Dated: September 26, 2023    Respectfully submitted,

PIERCE JOSEPH MCNAMARA and
KENDALL NOEL EDERER, plaintiffs,

By:   /s/Tod A. Lewis

Tod A. Lewis (Texas Bar #24091999)
**Tod Lewis Law, PLLC**
13267 Darwin Lane
Austin, TX 78729-7495
512-739-0390 (cell)
1-737-205-1291 (facsimile)
Tod@texasfaircredit.com

Attorney for Plaintiffs